UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-20131-CV-LENARD/O'SULLIVAN

IN RE: AMERICAN AIRLINES FLIGHT 331.

   Defendant.
_____/

THIS DOCUMENT RELATES TO:

*Bobby Ruff  v. American Airlines*

**DEFENDANT, AMERICAN AIRLINES, INC.'S**
***DAUBERT* MOTION TO EXCLUDE PTSD DIAGNOSIS AND**
**OPINIONS OF DR. JEFFREY COE**

Defendant, American Airlines, Inc. pursuant to Federal Rule of Evidence 702, hereby moves to preclude Plaintiff from eliciting any opinions on the subject of PTSD and the diagnosis of this condition by Dr. Jeffrey Coe and in support thereof states:

**I.     INTRODUCTION**

Plaintiff has filed an action against American Airlines relating to the landing of American Airlines Flight 331 in Kingston, Jamaica, asserting he sustained personal injuries on board this flight. Plaintiff contends he suffered a variety of injuries, including Post-Traumatic Stress Disorder. In the months following the accident, Plaintiff sought a medical evaluation with Dr. Jeffrey Coe in Chicago, Illinois. Plaintiff has since disclosed Dr. Coe as an expert witness, providing his expert witness report, and the parties took his deposition.

In Dr. Coe's expert report, he diagnosed Plaintiff with Post-Traumatic Stress Disorder (PTSD), a medical diagnosis, as a result of the Flight 331 accident. During his deposition, however, he made no reference to this diagnosis or opinion. American Airlines files this

*Daubert* Motion regarding the PTSD diagnosis contained in Dr. Coe's report in an abundance of caution in the event he intends to testify about this diagnosis at trial even though he did not mention it during his deposition.

In order to provide this opinion at trial, *Daubert* requires the party proffering the evidence to prove the expert is qualified to render the opinions at issue and that the methodology used to reach the opinion is reliable. In this case, Dr. Coe is not qualified to render this medical diagnosis as he is simply an occupational medicine doctor with no training, experience or education in psychiatry, psychology, or the diagnosis of PTSD. For this reason alone, Dr. Coe's PTSD opinions should be disallowed.[1]

Further, Dr. Coe's opinions are not reliable. There is no evidence that Dr. Coe followed the DSM-IV criteria in diagnosing Plaintiff with PTSD and the basis of Dr. Coe's diagnosis remains unknown despite his expert report and deposition testimony. Applying Plaintiff's reported symptoms to the DSM-IV criteria, Plaintiff does not qualify for a PTSD diagnosis, further evidencing the unreliability of Dr. Coe's opinion. Further, when diagnosing Plaintiff with PTSD, Dr. Coe simply took Plaintiff's self-reported symptoms and did nothing to verify these reports and did not administer any psychological testing. This also renders his methodology unreliable.

From a reliability standpoint, there is no evidence Dr. Coe followed the standard diagnostic tool for PTSD diagnosis, the DSM-IV criteria, and even if he did, Plaintiff fell far short of satisfying the criteria *and* he did nothing to verify Plaintiff's self-reported symptoms. These shortfalls makes his opinions unreliable under *Daubert*. Given Dr. Coe's lack of qualifications

---

[1] American Airlines has separately moved to strike the expert witness disclosures of all Colson Hicks Plaintiffs for failing to provide appropriate disclosures. Dr. Coe's opinions are subject to being stricken pursuant to that Motion.

to render a PTSD diagnosis, and the unreliability of his opinions, Dr. Coe should be precluded from providing any opinions at trial in which he discusses PTSD, his purported diagnosis of PTSD, and any causal connection between this diagnosis and the Flight 331 accident.

### II. DR. COE IS NOT QUALIFIED TO RENDER AN OPINION ON PTSD; THEREFORE, HIS OPINIONS ON THIS SUBJECT MUST BE EXCLUDED UNDER *DAUBERT*

In *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 "is premised on an assumption that the expert's opinions will have a reliable basis in the knowledge and expertise *of his discipline*." 509 U.S. 579, 592 (1993)(emphasis added). The critical inquiry is whether the expert has the knowledge and expertise for the particular opinion he or she seeks to offer at trial, which in this case is the diagnosis of PTSD and its causal connection to Flight 331.

Medical doctors will be deemed unqualified to make a psychiatric diagnosis, such as PTSD, despite their medical training when the doctors do not have specialized training or education in the area of mental health disorders or psychiatry. *See Schaeffer v. US Airways Group, LLC*, 2012 WL 2920375 (E.D. Penn. July 18, 2012)(excluding the testimony of a medical doctor on the subject of PTSD when he was not an expert in psychiatry, psychology, psychotherapy, the area of PTSD or its diagnostic criteria, and only took a course in psychiatry while in medical school and finding that a medical doctor who was "not an expert by skill or training in the area of diagnosis or causation of PTSD, and occasionally treat[ed] patients who have the disorder does not qualify them as an expert.").

Similarly, a medical doctor with limited education or training on psychiatric and psychological matters is not qualified to opine on the issue of PTSD. *See Ferris v. Penn. Fed. Brotherhood Maintenance of Way Employees*, 153 F. Supp. 2d 736, 745 (E.D. Penn. 2001). In

*Ferris*, the expert was a medical doctor who had specialized in the areas of pathology as well as pain management; however, he had limited training in depression and anxiety as he only took one course in this area in medical school. *Id.* at 743-44. Analyzing the admissibility of his opinions, the court stated: "Although an expert's testimony is not limited to the area in which he or she has specialized, the party offering the expert must demonstrate that the expert has the necessary expertise to provide reliable evidence." *Id.* When the proposed testimony falls outside of the witness's expertise, the court must exclude it. *Id.* Finding the medical doctor had no expertise in the diagnosis and treatment of depression or anxiety disorders or the causes of these ailments, he was precluded from providing any opinions with respect to the causal relationship between the plaintiff's symptoms and diagnosis and the subject incident. *Id.* at 744.

Even when the proposed experts specialize in counseling and treating patients with psychological conditions, these experts, such as licensed clinical social workers or licensed therapists, will also be unqualified to render a PTSD diagnosis given their lack of specialized psychological or psychiatric training and education. *See Naquin v. Elevating Boats, LLC,* 2012 WL 1664257 (E.D. La. May 11, 2012)(finding that "treating someone for PTSD is an altogether different matter than diagnosing it," the court determined that a licensed clinical social worker was not qualified under *Daubert* to testify about her diagnosis of PTSD); *Nemeth v. Citizens Financial Group*, 2012 WL 3278968 (E.D. Mich. Aug. 10, 2012)(excluding opinion of licensed clinical social worker that the plaintiff suffered from PTSD because she lacked education and training in psychiatry and psychology and because her qualifications were limited to a Master's degree in Social Work along with 18 years of experience as a licensed therapist); *Lee v. National R.R. Passenger Corp.,* 2012 WL 92363 (S.D. Miss. Jan. 11, 2012)(emphasis added)(precluding licensed clinical social worker from testifying about a PTSD diagnosis when she had no

psychology degrees, was not a psychologist or psychiatrist, could not prescribe medication, and could not administer psychological tests even though she treated patients suffering from PTSD as "*treating* someone for PTSD is an altogether different matter than *diagnosing* it"); *Blackshear v. Werner Enters.*, 2005 WL 6011291 (E.D. Ky. May 19, 2005)(holding a diagnosis of PTSD was outside a licensed clinic social worker's "discipline" and qualifications as social workers are not qualified to make a medical diagnosis because they are not trained or licensed in psychology); *Berry v. McDermid Tranp., Inc.*, 2005 WL 2147946 (S.D. Ind. Aug. 1, 2005)(holding a licensed therapist was not qualified to diagnose PTSD, even though the witness had 24 years of work experience with traumatized patients).

In this case, Dr. Coe is similarly unqualified to render a PTSD diagnosis based on his education, training, and experience. Dr. Coe received his medical degree from the University of Chicago Medical Center in 1970. *See* Deposition of Dr. Jeffrey Coe, P. 5:14 - P. 6:2, attached as Exhibit A. After completing one year of an internship and one year of residency, he began working in his area, which is occupational medicine. *Id.* Thereafter, he returned to graduate school in 1985 and obtained a Ph.D. in occupational medicine from the University of London and then became board certified in occupational medicine in 1991. *Id.* In total, Dr. Coe has practiced occupational medicine for 30 years. *Id.* at P. 6:3-5. Dr. Coe described occupational medicine as a specialty that deals with the health of people at work, workplace injuries, their rehabilitation, work restrictions, and vocational counseling or retraining. *Id.* at P. 6:6 – P. 7:1.

The only evidence of Dr. Coe's qualifications is that he is a medical doctor who specializes in occupational medicine. There is no evidence he has any education in the area of psychiatry, psychology, or the criteria for the diagnosis of PTSD. There is no evidence he has any training or experience in these areas either. In fact, he is not an expert is psychiatry,

psychology, psychotherapy, PTSD or its diagnostic criteria as no evidence exists to suggest he even took a psychiatry class while in medical school. Rather, Dr. Coe admits his area of expertise is occupational medicine, which is vastly different from psychiatry.

Much like the *Schaffer* and *Ferri*s cases in which the medical doctors were not qualified to testify about their PTSD diagnosis or its causal connection to the subject incident, Dr. Coe should likewise be precluded from providing any opinions at trial about his PTSD diagnosis as he is not qualified as an expert in this area.

### II. DR. COE'S DIAGNOSIS OF PTSD IS NOT RELIABLE UNDER *DAUBERT* AND MUST, THEREFORE, BE EXCLUDED

When determining the reliability of an expert's proposed opinions, courts will consider a number of criteria, including: whether a method consists of a testable hypothesis, whether the method has been subject to peer review, the existence of standards controlling the technique's operation, whether the method is generally accepted, and the relationship of the technique to the methods which have been established to be reliable. *Ferris*, 153 F. Supp. 2d at 741. The party offering the testimony has the burden of establishing the admissibility of the evidence, which in this case includes the reliability of the expert's proposed opinion. *Id.*

When offering opinions on a PTSD diagnosis, the expert cannot simply rely on the self-reports of the patient without performing any psychological tests to determine the accuracy of the diagnosis or otherwise independently verify the self-reported symptoms. *Kador v. City of New Roads*, 2011 WL 4889102 (M.D. La. Oct. 13, 2011). In *Kador*, the district court determined the plaintiff's expert, who diagnosed him with PTSD and Panic Disorder with Agoraphobia by applying the plaintiff's symptoms to the criteria set forth in the DSM-IV criteria,[2] did not use a

---

[2] The DSM-IV stands for the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, American Psychiatric Association.

reliable methodology. *Id.* In particular, the expert accepted the plaintiff's self-reported symptoms, but did nothing to independently verify them before making the diagnosis. *Id.* She did not perform any psychological testing to verify the plaintiff's symptoms either. *Id.* Under these circumstances, the opinion was "fundamentally unsupported" and offered no assistance to the jury. *Id.* For this reason, the district court excluded the expert's opinions at trial regarding the psychiatric diagnosis. *Id. See also Ferris,* 153 F. Supp. 2d at 744 n. 4 (finding that medical doctor's diagnosis of PTSD, which assumed everything the plaintiff told him was true unless it conflicted with his medical judgment, was either no method at all or it contained no indicia of reliability, making it inadmissible).

Similarly, when an expert's opinion conflicts with the DSM-IV criteria for a diagnosis of PTSD, that expert's opinions are not reliable. *Woods v. Olin Corp.*, 2002 WL 34371098, *2 (S.D. Ill. July 9, 2002). In *Woods*, the expert's opinion on PTSD was based on inaccurate facts and the diagnosis itself conflicted with the PTSD criteria under the DSM-IV. *Id.* With regard to the inaccuracy of facts, the expert relied solely on information the plaintiff provided to render the diagnosis but did not contact any of her prior physicians or therapists to verify the information nor did she review any other medical records or treatment notes from other physicians. *Id.* A review of such evidence would have revealed the plaintiff had a pre-existing history of depression and panic attacks. *Id.* For this reason, her opinions were based on inaccurate facts, making them unreliable. In addition, the expert testified she relied on the DSM-IV criteria to render her diagnosis; however, her opinions actually contradicted the criteria. *Id.* at *3. Based on the foregoing, the district court concluded "the expert's theory is 'a far cry from the tested hypotheses foreseen as the basis of 'scientific knowledge' testified to under Rule 702" and excluded the expert's testimony as unreliable. *Id.*

District courts have also excluded experts who diagnosed PTSD when the expert was not familiar with the DSM-IV criteria. *Nemeth v. Citizens Financial Group*, 2012 WL 3278968 (E.D. Mich. Aug. 10, 2012). The expert in *Nemeth* claimed she used the DSM-IV criteria for her diagnosis of PTSD; however, when asked about it, it became apparent she was not familiar with its criteria. *Id.* at *6. She was unaware of the definitions of several basic diagnostic features in the manual and was unfamiliar with the DSM-IV definition of PTSD. *Id.* Finding her testimony was unreliable because she lacked fundamental knowledge about PTSD, the district court determined her testimony was unreliable and inadmissible. *Id.*

In this case, Dr. Coe likewise has no reliable methodology for diagnosing Plaintiff with PTSD. In his expert report, Dr. Coe concludes that Plaintiff needs medical treatment related to his PTSD and requires neuropsychological treatment and therapy for this condition. *See* Dr. Coe's Expert Report, P. 7, attached as Exhibit B. However, Dr. Coe's report provides no information about how he arrived at the conclusion that Plaintiff suffers from PTSD so as to require future care and treatment for this condition. There is no evidence to suggest Dr. Coe was following the DSM-IV criteria for the diagnosis of PTSD as he makes no mention of it in his report or during his deposition. Applying the symptoms Plaintiff expressed to Dr. Coe during the evaluation to the diagnostic criteria, Plaintiff cannot possibly satisfy the DSM-IV criteria, which also makes Dr. Coe's opinion unreliable. Further, Dr. Coe did not employ any methodology whatsoever as he simply took Plaintiff's statements as true without ever verifying them or performing any psychological testing. The lack of methodology in Dr. Coe's diagnosis renders his opinion unreliable and inadmissible.

The first issue with Dr. Coe's testimony involves his failure to apply or mention the DSM-IV criteria. In essence, it is a mystery as to how Dr. Coe reaches the conclusion that

Plaintiff suffers from PTSD as he provides no basis for this opinion in his report. Further, during his deposition, he never provides an opinion that Plaintiff suffers from PTSD, much less the basis for such an opinion. By way of brief background, the *Diagnostic and Statistical Manual of Mental Disorders* (DSM), Fourth Edition, published by the American Psychiatric Association "provides a common language and standard criteria for the classification of mental disorders. http://en.wikipedia.org/wiki/Diagnostic_and_Statistical_Manual_of_Mental_Disorders (last visited March 27, 2013). This manual "is used in the United States and to various degrees around the world." *Id.* "It is used or relied upon by clinicians, researchers, psychiatric drug regulation agencies, health insurance companies, pharmaceutical companies, and policy makers." *Id.* As it relates to PTSD, the DSM-IV outlines the diagnostic criteria as follows:

> **Criterion A: stressor**
>
> The person has been exposed to a traumatic event in which both of the following have been present:
>
> The person has experienced, witnessed, or been confronted with an event or events that involve actual or threatened death or serious injury, or a threat to the physical integrity of oneself or others.
>
> The person's response involved intense fear, helplessness, or horror.
>
> **Criterion B: intrusive recollection**
>
> The traumatic event is persistently re-experienced in at least **one** of the following ways:
>
> Recurrent and intrusive distressing recollections of the event, including images, thoughts, or perceptions.
>
> Recurrent distressing dreams of the event.
>
> Acting or feeling as if the traumatic event were recurring (includes a sense of reliving the experience, illusions, hallucinations, and dissociative flashback episodes, including those that occur upon awakening or when intoxicated).

Intense psychological distress at exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event.

Physiologic reactivity upon exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event

**Criterion C: avoidant/numbing**

Persistent avoidance of stimuli associated with the trauma and numbing of general responsiveness (not present before the trauma), as indicated by at least **three** of the following:

Efforts to avoid thoughts, feelings, or conversations associated with the trauma

Efforts to avoid activities, places, or people that arouse recollections of the trauma

Inability to recall an important aspect of the trauma

Markedly diminished interest or participation in significant activities

Feeling of detachment or estrangement from others

Restricted range of affect (e.g., unable to have loving feelings)

Sense of foreshortened future (e.g., does not expect to have a career, marriage, children, or a normal life span)

**Criterion D: hyper-arousal**

Persistent symptoms of increasing arousal (not present before the trauma), indicated by at least **two** of the following:

Difficulty falling or staying asleep

Irritability or outbursts of anger

Difficulty concentrating

Hyper-vigilance

Exaggerated startle response

**Criterion E: duration**

Duration of the disturbance (symptoms in B, C, and D) is more than one month.

**Criterion F: functional significance**

The disturbance causes clinically significant distress or impairment in social, occupational, or other important areas of functioning.

*See* http://www.ptsd.va.gov/professional/pages/dsm-iv-tr-ptsd.asp (last visited March 27, 2013)(citing American Psychiatric Association. (2000). *Diagnostic and Statistical Manual of Mental Disorders* (Revised 4th ed.)).

Neither Dr. Coe's deposition nor his report provide any information about the basis for his PTSD diagnosis or whether he used the DSM-IV criteria. Instead, Dr. Coe testified he obtained a general history from Plaintiff about the Flight 331 accident. *See* Exhibit A, P. 7:18 – P. 8:2. Plaintiff, in turn, provided information about the Flight 331 accident as well as his physical injuries, indicating he was bleeding from his face, sustained a laceration to his face, and experienced pain there. *Id.* at P. 8:3 – P. 9:12. When Dr. Coe saw him six months later in June of 2010 for an evaluation, Plaintiff told him he had a scar on the right eyebrow region from the laceration with occasional pain and localized tingling, daily headaches, pain in his neck and upper back, and occasional tingling in both of his hands. *Id.* at P. 11:2 – P. 12:17. After obtaining his history, Dr. Coe performed a physical examination on the Plaintiff. *Id.* at P. 16:17 – P. 17:1. Based on the history he obtained and his physical exam, Dr. Coe opined Plaintiff sustained a facial laceration and contusion, strain injuries to his neck, back, and head, with residuals of myofascial pain, residuals of facial scarring, left arm nerve irritation, and neuropsychological injuries, such as short-term memory deficits, difficulty with cognition, and judgment. *Id.* at P. 21:24 – P. 22:24. It was Dr. Coe's opinion Plaintiff sustained these injuries in the Flight 331 accident. *Id.* at P. 22:25 – P. 23:20.

Even though Dr. Coe's deposition testimony did not specify he diagnosed Plaintiff with PTSD, his expert report indicates he did. *See* Exhibit B at P. 7. Further, Dr. Coe opined that due

to Plaintiff's neuropsychological and neurocognitive changes Plaintiff needs formal neuropsychological testing as well as cognitive therapy and counseling. *See* Exhibit A at P. 23:21 – P. 25:13. On the subject of psychological changes, Dr. Coe admitted he did not have any information on Plaintiff's prior psychological or mental status when he reached his opinions of a psychological nature. *Id.* at P. 32:18 – P. 33:4.

The foregoing testimony demonstrates multiple things about the reliability of Dr. Coe's testimony. The first is there is no indication he followed the DSM-IV criteria when diagnosing Plaintiff with PTSD. This is the standard diagnostic criteria accepted in the United States and around the world for the diagnosis of mental health disorders. In fact, neither Dr. Coe's report nor his deposition testimony shed light on what kind of criteria Dr. Coe used in reaching his PTSD diagnosis. In either event, he could not have used DSM-IV for his diagnosis for the reasons explained below. Thus, Dr. Coe's failure to follow the DSM-IV diagnostic criteria alone renders his PTSD diagnosis unreliable.

Giving Dr. Coe the benefit of the doubt and independently analyzing whether Plaintiff's symptoms, as expressed to Dr. Coe, qualify for PTSD under the DSM-IV, Dr. Coe's opinions are still unreliable as they contradict the diagnostic criteria. Dr. Coe's report indicates that as of June of 2010, Plaintiff suffered from PTSD requiring further medical care. Dr. Coe's testimony, however, provides no information about any psychological symptoms that Plaintiff expressed other than neuropsychological issues, such as short-term memory problems, difficulty with cognition, and judgment. None of these is a relevant factor for the diagnosis of PTSD under the DSM-IV criteria.

Reviewing each of the criteria, there is no doubt Plaintiff satisfies Criterion A, which is exposure to a stressor or a major traumatic event that involves threatened death or injury.

However, based on the history Plaintiff provided Dr. Coe, no evidence exists that Plaintiff suffered a single symptom under Criteria B, C, or D, dealing with intrusive recollections, avoidant/numbing, and hyperarousal. Criterion E, which deals with duration, explicitly states the duration of the symptoms under criteria B, C, and D must last more than one month. There is no evidence Plaintiff suffered any symptoms under B, C, or D; therefore, Plaintiff does not satisfy this criterion either. Finally, Criterion F requires evidence that the symptoms cause clinically significant distress or impairment in social, occupational or other important areas of function. Again, there is no evidence Plaintiff suffered any of the PTSD symptoms; therefore, there is no evidence that any alleged PTSD symptoms impacted his occupational, social or other areas of function. Applying the symptoms Plaintiff reported to Dr. Coe to the PTSD criteria, it is impossible to diagnose Plaintiff with PTSD. Much like the excluded expert in *Woods* whose diagnosis contradicted the DSM-IV criteria for PTSD, Dr. Coe's diagnosis also contradicts the criteria, making his diagnosis unreliable.

Compounding the unreliability of his diagnosis is his lack of methodology. Dr. Coe simply took Plaintiff's self-reported symptoms, failed to apply them to the DSM-IV criteria and then decided they were diagnostic of PTSD. Dr. Coe did absolutely nothing to verify any symptoms of a psychological nature, such as speaking with her physicians, checking his prior history, or administering psychological tests to determine the veracity of the information he provided. In fact, he admitted he had no information about Plaintiff's pre-accident psychological or mental status. Much like the expert in *Ferris*, who assumed everything the plaintiff told him was true, Dr. Coe simply assumed everything Plaintiff said was true. This method is really no method at all and contains no indicia of reliability, making his diagnosis inadmissible for this additional reason.

WHEREFORE Defendant, American Airlines, Inc., hereby seeks to exclude any opinions from Dr. Jeffrey Coe in which he discusses PTSD, his diagnosis of PTSD, or provides any causation opinions relating Plaintiff's PTSD to the Flight 331 incident and any other relief this Court deems proper.

## CERTIFICATE OF CONFERENCE

Counsel for American Airlines certify they conferred with counsel for Plaintiff on March 29, 2013 regarding the relief sought in this Motion. Plaintiff objects to the relief sought.

Respectfully submitted,

*/s Marty Fulgueira Elfenbein*
GREGORY M. PALMER
Florida Bar No. 784796
gpalmer@rumberger.com
MARTY FULGUEIRA ELFENBEIN
Florida Bar No. 0020891
melfenbein@rumberer.com
RUMBERGER, KIRK & CALDWELL
Brickell Bayview Centre, Suite 3000
80 S.W. 8th Street (33130-3037)
Post Office Box 01-9041
Miami, Florida 33101
Telephone: (305) 358-5577
Telecopier: (305) 371-7580

Attorney for American Airlines, Inc.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on this 29th day of March, 2013, we filed this document via CM/ECF, which will send Notices of Electronic Filing to: Counsel for Plaintiffs, **Steven C. Marks, Esq.**, and **Ricardo Martinez Cid, Esq.,** Podhurst Orseck, P.A., 25 West Flagler Street, Suite 800, Miami, Florida 33130; **Stuart Z. Grossman, Esq.** and **Seth Miles, Esq.,** Grossman Roth, P.A., 2525 Ponce de Leon Boulevard, Suite 1150, Coral Gables, FL 33134; **David R.**

**Heffernan, Esq.,** Hamilton, Miller & Birthisel, LLP, 150 S.E. Second Avenue, Suite 1200, Miami, Florida 33131; **Curtis Miner, Esq.,** Colson Hicks Eidson, 255 Alhambra Circle, Coral Gables, FL 33134; **Jeffrey P. Allen, Esq.,** Lawson & Weitzen, LLP, 88 Black Falcon Avenue, Boston, MA 02210; **Richard E. Tullie, Esq.,** Richard E. Tullie, P.A., Boca Palm Professional Plaza, 6971 N. Federal Highway – Suite 401, Boca Raton, Florida 33487; **Karlyn R. Hylton, Esq.,** 120 East Colonial Drive, Orlando, Florida 32801; **Judson H. Lipowitz, Esq., John R. Solter Jr., Esq.,** Azrael, Franz, Schwab & Lipowitz, LLC, 101 E. Chesapeake Ave. Fifth Floor, Baltimore, MD 21286; and **Joseph B. Chazen, Esq.,** Meyers, Robell & Rosenbaum, P.A., 6801 Kenilworth Avenue, Suite 400, Riverdale, Maryland 20737.

*/s Marty Fulgueira Elfenbein*
GREGORY M. PALMER
Florida Bar No. 784796
gpalmer@rumberger.com
MARTY FULGUEIRA ELFENBEIN
Florida Bar No. 0020891
melfenbein@rumberer.com
RUMBERGER, KIRK & CALDWELL
Brickell Bayview Centre, Suite 3000
80 S.W. 8th Street (33130-3037)
Post Office Box 01-9041
Miami, Florida 33101
Telephone: (305) 358-5577
Telecopier: (305) 371-7580

Attorney for American Airlines, Inc.